1

2

3

4

5

6

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

7   UNITED STATES OF AMERICA,

8                                   Plaintiff,

9          v.

10   JOANN ARGYRIS,

11                                   Defendant.

Case No. 2:15-cr-0047-KJD-NJK

**<u>ORDER</u>**

12          Before the Court is defendant Joann Argyris's Motion to Vacate Judgment, or in the

13   Alternative, to Quash Writ of Garnishment (ECF No. 119), to which the United States responded

14   (ECF No. 121), and Argyris replied (ECF No. 124). Joann Argyris is currently serving five

15   years' probation after pleading guilty to one count of mail fraud. The fraud involved the arson

16   and destruction of a gas station in which Argyris held an interest. Though Argyris's son was the

17   driving force behind the fraud, Argyris knew or should have known that the fire and resulting

18   insurance checks were illegitimate. In August of 2019, the Court issued an amended judgment,

19   which sentenced Argyris to five years' probation and imposed restitution of $1,323,986.30—the

20   exact amount that Colorado Casualty Insurance Company paid out under the gas station policy.

21          Argyris now asks the Court to vacate the amended judgment against her because the

22   Court errantly ordered restitution without holding a dedicated restitution hearing, the Probation

23   Office did not provide a presentence investigation report to independently outline Colorado

24   Casualty's losses, and because Colorado Casualty never filed a victim impact report or requested

25   restitution. Alternatively, Argyris urges the Court to quash the writ of garnishment in this case

26   because it pursues funds in a spendthrift trust, which she does not have access to.

27          When reviewed against the record in this case, Argyris's arguments are meritless. The

28   Court was required to order restitution under the Mandatory Victims Restitution Act due to

Argyris's fraud conviction, and the process was sound. Therefore, the ensuing amended judgment is valid. Further, the financial protection offered by a spendthrift trust does not extend to federal restitution orders. Accordingly, Argyris's motion is denied.

## I.  **Background**

On September 19, 2010, Joann Argyris's son, Peter Argyris, set fire to a gas station that he co-owned with his mother to fraudulently collect insurance proceeds. At the time, Joann Argyris co-owned the Las Vegas gas station with Argyris Enterprises, LLC as tenants in common. Peter Argyris owned 80% of Argyris Enterprises, LLC, and Joann Argyris owned the other 20%. Plea Agreement ¶ 2, ECF No. 79. Colorado Casualty Insurance Company provided a blanket insurance policy for Argyris and Argyris Enterprises, LLC's properties, which included the destroyed gas station. Id. ¶ 4. Colorado Casualty made several payments to Argyris Enterprises, LLC under the policy. The insurer paid approximately $1.2 million in replacement value for the building and $178,770 for loss of business income. Id. ¶ 7. The total loss to Colorado Casualty was $1,378,770. Id. Joann Argyris knew or reasonably should have known that Peter's actions were fraudulent, but she deliberately avoided learning the extent of Peter's fraud. Id. ¶ 11.

In February of 2015, a federal grand jury returned a nine-count indictment against Joann and Peter. Indictment, ECF No. 1. Among the charges were several counts of mail fraud that resulted from Peter's use of the United States Postal Service to send fraudulent documents and receive illegitimate insurance payments. Id. at 4–5. The indictment also charged the pair with conspiracy to commit arson, arson resulting in a death, and the use of fire to commit mail fraud. Peter Argyris died before law enforcement could finish its investigation into the arson and insurance fraud. Pre-Sentence Investigation Report ¶ 47 (PSR). That investigation uncovered that Joann was not involved with the plot to burn down the gas station, and her knowledge of Peter's fraud was deliberately limited. Ultimately, Joann pleaded guilty to one count of mail fraud. All of the remaining charges were dismissed. Judgment, ECF No. 87.

Following Argyris's guilty plea, the United States Probation Office prepared a presentence investigation report (PSR). As is custom, the Probation Office did not file the PSR,

nor did it make the report publicly available. Rather, Probation provided the report to Argyris's counsel and the prosecution. The PSR contains Argyris's sensitive personal information, the facts surrounding the mail fraud to which she pleaded guilty, as well as each of Colorado Casualty's disbursements to Peter Argyris under his blanket insurance policy. The PSR identified six checks made payable to Peter Argyris: (1) $701,833 on December 21, 2010; (2) $237,737.73 on May 6, 2011; (3) $277,020.56 on July 6, 2012; (4) $92,132 on August 2, 2012; (5) $7,198 on September 7, 2012; and (6) 8,067.01 on August 7, 2013. The total loss amounted to $1,323,986.30. The PSR did not recommend a total restitution amount and left that determination for a later date. PSR at 19.

In addition to cataloguing Peter's fraudulent activities, the PSR detailed Joann's culpability in the overall fraud. The report acknowledged that Joann may not have known the extent of Peter's fraud. However, it found that Joann understood the "high probability" that Peter was defrauding Colorado Casualty. PSR at ¶ 19. Joann's plea agreement confirmed that she indeed knew or reasonably should have known that Peter committed fraud. Plea Agreement ¶ 11. Argyris and the United States each filed sentencing memoranda. ECF Nos. 82, 85. Though they agreed on Argyris's ultimate probationary sentence, they differed on the appropriate amount of restitution. The government sought to impose the entire amount of loss, $1,323,986.30, on Argyris. Argyris countered that she should only be saddled with 20% of the total loss because she only held a 20% interest in the gas station. Def. Sent. Memo. at 4. The Court sentenced Argyris to five years' probation on October 30, 2018. However, the Court did not impose restitution at that time. Instead, it deferred its decision on restitution and allowed limited discovery on the issue.

Shortly after sentencing, non-party JCW Minimart filed a victim impact statement and request for restitution. ECF No. 88. JCW claimed that it leased the destroyed gas station and that it had spent more than $400,000 improving the property before the fire. Id. at 2. JCW sought $627,435 in restitution. Id. at 5. After limited discovery, the parties stipulated to withdraw JCW's claim. JCW's withdrawal left only Colorado Casualty as victim. JCM's restitution request and its subsequent litigation delayed the Court's final restitution order. However, the Court

1    issued an amended judgment in August of 2019 that imposed $1,323,986.30 in restitution on

2    Argyris—the amount of Colorado Casualty's total loss. Am. Judgment 5–6, ECF No. 113.

3    Argyris did not request reconsideration of the amended judgment, nor did she appeal. Instead,

4    Argyris waited until the government attempted to collect on the restitution order to challenge its

5    sufficiency. In response to various writs of continuing garnishment, Argyris filed this motion to

6    vacate her restitution order or in the alternative to quash the writs of garnishment. See Mot. to

7    Vacate, ECF No. 119. The government has since responded (ECF No. 121), and the Argyris's

8    motion is fully briefed.

9    **II.    Analysis**

10   Argyris claims that her amended judgment, including restitution, must be vacated

11   because the Court did not comply with 18 U.S.C. § 3664's requirements for issuing an amended

12   judgment. Argyris makes three arguments. First, that the Court could not amend its judgment

13   until the Probation Office prepared a presentence investigation report that detailed the extent of

14   Colorado Casualty's losses. Second, that Probation's failure to prepare such a report kept her

15   without notice of the impending restitution order. And finally, that the Court failed to hold a

16   separate hearing on restitution. Mot. to Vacate at 5–6. As more fully detailed below, the record

17   does not support Argyris's claims that Probation failed to prepare a PSR that detailed Colorado

18   Casualty's losses. Likewise, § 3664 does not require the Court to hold a separate restitution

19   hearing.

20   As an initial matter, the Court must determine the appropriate framework to evaluate

21   Argyris's motion to vacate her judgment. A criminal defendant may only move to vacate a

22   judgment in certain delineated cases. Certain criminal defendants may move to correct their

23   sentence under 18 U.S.C. § 2255, the federal habeas statute, but Argyris did not bring her claim

24   under § 2255. Therefore, § 2255 does not apply. Alternatively, Federal Rules of Criminal

25   Procedure 35 and 36 authorize a defendant to alter or correct a sentence under limited

26   circumstances. Rule 35, for example, allows the Court to correct a sentence tainted by technical

27   errors, mathematical errors, or any other clear error within fourteen days of entry of judgment.

28   Fed. R. Crim. P. 35(a). Argyris did not file this motion within fourteen days, so Rule 35 does not

1    apply. Rule 36 allows the Court to correct a clerical error in the judgment at any time. Yet,

2    Argyris does not claim that her judgment rests on a clerical error.

3         Argyris does not reference § 2255, Rule 35 or 36 in her motion, leaving the Court to

4    guess at the appropriate framework within which to evaluate her motion. She merely argues that

5    "in the instant matter, the Court, respectfully, has not followed the proper procedure for issuing

6    its Amended Order pursuant to 18 U.S.C. § 3664 and said order should be set aside." Mot. to

7    Vacate at 5. Argyris leaves little doubt that she is mounting a direct challenge to the Court's

8    application of the law in her case—a challenge more appropriate on appeal than on a motion to

9    vacate. See Autry v. Estelle, 464 U.S. 1, 3 (1983) ("direct appeal is the primary avenue for

10   review of a conviction or sentence") (internal citations omitted). Therein lies Argyris's issue. She

11   expressly waived her right to appeal the very restitution order she now challenges.  Plea

12   Agreement at 11 (expressly waiving "any order of restitution"). Accordingly, inasmuch as

13   Argyris's motion mounts a challenge more appropriate for direct appeal, her motion is denied.

14   She cannot use a motion to vacate to escape the consequences of  her valid appeals waiver.

15        Even if Argyris's motion was properly before the Court, it fails on the merits. The record

16   plainly demonstrates that Probation prepared a presentence investigation report that identified the

17   extent of Colorado Casualty's loss and that Argyris received a copy of that report. Title 18

18   U.S.C. § 3663A requires the Court to impose restitution to the victims of certain crimes. Among

19   those crimes is an offense against property "including any offense committed by fraud or deceit."

20   18 U.S.C. § 3663A(c). Argyris's conviction for mail fraud falls under § 3663A(c)'s umbrella.

21   United States v. Lo, 839 F. 3d 777, 778 (9th Cir. 2016). Thus, § 3663A required the Court to

22   impose at least some restitution on Argyris. Title 18 U.S.C. § 3664 governs the procedure for

23   issuing that restitution order. Section 3664(a) requires the Court to order Probation to "include in

24   its presentence report . . . information sufficient for the Court to exercise its discretion in

25   fashioning a restitution order." The report should include a complete accounting of each victim's

26   losses and the economic circumstances of the defendant "to the extent practicable." Id.

27        The Probation Office prepared an accurate and complete report that provided the Court

28   sufficient information to fashion a restitution order. Probation submitted the report in September

of 2018 in anticipation of Argyris's sentencing. The report detailed Argyris's deliberate ignorance to her son's fraud. PSR ¶ 7 ("[Argyris] became aware of a high probability that Peter was defrauding Colorado Casualty Insurance Company, but *she deliberately avoided learning the truth about what he was doing*") (emphasis added). The report also illuminated Peter's ploy to destroy the gas station and his financial interest in doing so. Id. ¶¶ 9–18. As to Colorado Casualty's loss, the report listed each payment that the insurer paid out to Peter or Argyris Enterprises, LLC, an entity co-owned by Peter and Joann Argyris.

> On December 21, 2010, Peter Argyris received a check for $701,833; on May 6, 2011, he received a check for $277,020.56; on July 6, 2012, he received a check for $237,738.73; on August 2, 2012, he received a check for $92,132; on September 17, 2012, he received a check for $7,195; and on August 7, 2013, he received a check for $8,067.01. *All totaled, the Colorado Casualty Insurance Company sent to Argyris Enterprises, LLC., $1,323,986.30.*

Id. ¶ 18 (emphasis added). The report did not identify any other victims or recommend restitution above Colorado Casualty's total loss. That did not mean that there were no other victims. In fact, a third-party later submitted a victim impact statement and request for restitution. ECF No. 88. Given that unknown victims could exist, the PSR left the total restitution order "to be determined." Id. at 19.

The PSR adequately showed Colorado Casualty's loss. Restitution orders are subject to the preponderance of the evidence standard, and the burden falls on the government's attorney to prove the amount of restitution. 18 U.S.C. § 3664(e); United States v. Tsosie, 639 F.3d 1213, 1221 (9th Cir. 2011). At minimum, the Court's restitution order must be supported by evidence that the defendant's actions proximately caused the victim's loss more likely than not. Tsosie, 639 F.3d at 1222. The evidence in the record must meet a "threshold level of adequacy," (id. at 1221), and the Court enjoys flexibility when evaluating the victim's complete losses. Untied States v. Gordon, 393 F.3d 1044, 1053 (9th Cir. 2004).

The government made the necessary showing that Argyris's fraud proximately caused Colorado Casualty's losses. The plea agreement admits all of the facts needed to support Argyris's involvement in Peter's fraud. She admitted that during the course of Peter's scam,

1    Argyris "became aware of a high probability that Peter Argyris was defrauding Colorado

2    Casualty," but she deliberately avoided learning the truth. Plea Agreement at 5. Argyris further

3    admitted—contrary to her arguments now—that she received some of the proceeds from Peter's

4    scheme. Id. After all, Argyris held a 20% interest in the gas station. Accordingly, the Court

5    properly found that Argyris's actions proximately caused Colorado Casualty's loss more likely

6    than not.

7          Argyris received a copy of Probation's presentence investigation report as did the

8    prosecution and the Court. It is difficult to square Argyris's current argument that Probation did

9    not provide her a copy of the PSR with her own sentencing memorandum. See Sent. Memo.,

10   ECF No. 82. Exhibit A of Argyris's sentencing memorandum is titled "Objections to Pre-

11   Sentence Investigation Report," and she cites the PSR at least five separate times. To put it

12   lightly, the Court is not moved by Argyris's blatantly incorrect assertion that she "has never been

13   given a copy of her probation officer's presenting [sic] report or other report pertaining to

14   Colorado Casualty Insurance Company's alleged damages." Mot. to Vacate at 5. Argyris's

15   companion argument that the government's failure to file the PSR somehow contravenes

16   § 3664(a) (see Reply 2, ECF No. 124) is also unpersuasive. The Court does not file or otherwise

17   disclose PSRs because Probation only releases the reports "for the limited purpose of sentencing,

18   but [they] are otherwise in the custody of the U.S. Probation Office." In re Siler, 571 F.3d 604,

19   609 (6th Cir. 2009). Therefore, Probation prepared a satisfactory pre-sentence investigation

20   report that detailed Colorado Casualty's losses, it was not error that the PSR was not filed.

21         Similarly, nothing in § 3664 requires the Court to hold a separate hearing before it

22   imposes restitution. Section 3664(d)(4) and (5) permit the Court to require additional

23   documentation or hold a hearing to determine the total loss, but neither is required. Likewise, the

24   statute does not require a victim to participate in the restitution process at all. See 18 U.S.C.

25   § 3664(g)(1). Nevertheless, Argyris argues that the Court erred by not holding a hearing to

26   determine the extent of Colorado Casualty's loss that should be attributed to her, which she

27   claims should be $0. Mot. to Vacate at 5. Argyris's argument misunderstands the purpose of

28   restitution. The point of ordering restitution is primarily to make the victim whole. It is not

1    necessarily to divest the defendant of her gain. See United States v. Gossi, 608 F.3d 574, 581

2    (9th Cir. 2010). At bottom, restitution seeks to restore the victim to the position it was in before

3    the defendant's fraud. Id. Imposing only a portion of restitution commensurate with Argyris's

4    claimed gain would contravene the purpose of the restitution order. Therefore, the amount of

5    restitution the Court imposed was appropriate.

6         Last, Argyris requests that if the Court refuses to vacate her restitution order entirely that

7    it quash her outstanding writ of garnishment because her assets are locked away in a spendthrift

8    trust. Argyris cites Klabacka v. Nelson, 394 P.3d 940 (Nev. 2017) (en banc) for the proposition

9    that the assets in a spendthrift trust fall outside the reach of a valid restitution order. Klabacka

10   says no such thing. There, the Nevada Supreme Court analyzed the effect of a divorce decree on

11   the former spouses' spendthrift trusts and found that the husband's trust was immune from child

12   support obligations because those obligations did not exist when he established the trust. Id. at

13   951. Though the case acknowledges that spendthrift trusts protect their assets from some court

14   orders, the opinion does not contemplate a criminal restitution order and even admits exceptions

15   to civil orders. Klabacka, 394 P.3d at 949 n.5.

16        Even if Nevada law exempted spendthrift trust assets from garnishment, that law would

17   be preempted here by the Fair Debt Collections Practices Act (FDCPA). See 28 U.S.C. §§ 3001–

18   3308. The FDCPA explains that state law cannot "curtail or limit the right of the United States

19   . . . to collect any fine, penalty, assessment, *restitution*, or forfeiture arising in a criminal case."

20   28 U.S.C. § 3003(b)–(b)(2) (emphasis added). Thus, the FDCPA would preempt any Nevada law

21   that sought to protect funds from a valid federal restitution order. Therefore, the funds held in

22   Argyris's spendthrift trust are not exempt from the valid writ of garnishment.

23        In sum, the Court doubts that Argyris has an avenue for vacating her judgment. She did

24   not move timely under Fed. R. Crim. P. 35 to correct an error in her judgment, she is not seeking

25   to correct a clerical error under Rule 36, and she did not move for relief from judgment under 18

26   U.S.C. § 2255. In the event her motion is properly before the Court, it fails on the merits.

27   Argyris's argument that the Court errantly issued an amended judgment is belied by the record.

28   Contrary to Argyris's assertions, Probation prepared an adequate report detailing the extent of

1    Colorado Casualty's losses, and Probation provided that report to Argyris's counsel. The

2    government met its burden to prove Colorado Casualty's losses by a preponderance of the

3    evidence, and the Court was not required to hold a separate hearing before amending its

4    judgment to impose restitution. Finally, the Court refuses to quash the valid writ of garnishment

5    here because Argyris's spendthrift trust does not protect its assets from lawful restitution orders.

6        **III.    <u>Conclusion</u>**

7        Accordingly, IT IS HEREBY ORDERED that Joann Argyris's Motion to Vacate

8    Judgment, or in the Alternative, to Quash Writ of Garnishment (ECF No. 119) is **DENIED**.

9    Dated this 22nd day of April, 2020.

10

11   _____

12   Kent J. Dawson
     United States District Judge